Robert ARAKELIAN, et al., Plaintiffs,

v.

NATIONAL WESTERN LIFE
INSURANCE COMPANY, et
al., Defendants.

Civ. A. No. 84–1953 SSH.

United States District Court,
District of Columbia.

Oct. 30, 1987.

Laurence E. Gold, James S. Ray and Samuel W. Halpern, Washington, D.C., for plaintiffs.

Alvin I. Frederick, Baltimore, Md., for Benefits, Inc.

Gerald I. Katz, Washington, D.C., for United Masonry.

Richard G. Vernon, Washington, D.C., George Beall, James R. Eyler, Baltimore, Md., Will D. Davis, Austin, Tex., for Nat. Western.

Tarrant H. Lomax, Washington, D.C. for Halco Engineering and Welcon, Inc.

David P. Durbin, Washington, D.C., for Trustees.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court upon the cross-motions for partial summary judgment of plaintiffs (named below) and defendants National Western Life Insurance Company, the Builders, Contractors and Employees Retirement Trust and Pension Plan, Richard Boswell, John R. Howard, and Richard Andrews. Upon consideration of the pleadings and the entire record, the Court concludes that the motions must be granted in part and denied in part.

### Facts

This is a civil action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, brought by eight individual participants in pension plans patterned after a master pension plan, Robert Avakelian, Joseph A. Bankins, Ralph I. Butler, Jr., Roy Butler, James R. Chase, Elmer A. Diggs, Ryland Stewart, and Chris C. Wills, and by two labor organizations suing on behalf of participants in those pensions plans, Laborers' International Union of North America, AFL–CIO, and Washington, D.C., and Vicinity Laborers District Council. For purposes of the motions at issue, the relevant defendants in the action are National Western Life Insurance Company (National Western), the sponsor, *inter alia,* of the master pension plan; the Builders, Contractors and Employees Retirement Trust and Pension Plan, the master plan for the pension plans at issue (the master plan); and Richard Boswell, John R. Howard, and Richard Andrews, trustees of the pension plans.

In 1977, National Western established the master plan, which was designed as a model pension benefit program for non-union employees working on Davis–Bacon or state prevailing wage projects. Pursuant to statute, contractors on these projects are required to pay to their employees the "prevailing wage" for the locality where the work is located. Without altering the terms of the master plan, employers adopt the master plan, thus creating an instant pension plan for their employees. Employers adopting the master plan contribute a portion of their employees' wages to an employee pension plan, in lieu of paying wages directly to the employee, permitting the employer to reduce payroll taxes. National Western is designated in the master plan (and, therefore, in each employer-created pension plan) as the administrator, sponsor, and named fiduciary. As designated in the master plan, three officers of National Western serve as trustees for each employee pension plan. According to the master plan instrument, employee benefits are provided solely through the purchase of group annuity contracts from National Western. National Western's board of directors retains sole discretion to determine the rate of "excess interest" (*i.e.,* the amount of interest paid in addition to the contractually agreed return) on those annuity contracts. Effective August 1, 1983, National Western amended the master plan to provide that it would deduct for early withdrawal a surrender charge from a beneficiary's accrued benefit. The new surrender charge equals 18% of a participant's first year contributions, with interest, and 3% of a participant's contributions for the next four years.

## DISCUSSION

### Standing

Defendants again have raised the issue whether plaintiff labor organizations have standing to sue in this action. By Order dated March 18, 1985, the Court held the labor organizations do have standing to remain in this action. Construing defendants' arguments on the issue of standing in the pleadings now before the Court as a motion to reconsider, the Court concludes its initial disposition of the issue was correct and denies the motion to reconsider.

### Creation of the Plan

Title 29 U.S.C. § 1002(2) provides that an employee pension benefit plan must be established or maintained by an "employer" or by an "employee organization." Accordingly, the master plan created by National Western does not become a pension plan

under ERISA until it is adopted by an employer. At issue in this action, therefore, is a collection of structurally identical employee benefit plans, each having different participants and adopting employers. Each participant to a plan has standing to raise claims only as to the separate plan with which that participant is associated. *Brink v. DaLesio,* 667 F.2d 420, 426–28 (4th Cir.1982). Because each plan created by employer adoption of the master plan is structurally identical, however, the following discussion applies equally to each plan. For convenience, the Court will refer to this collection of separate employee benefit plans as "the Plan."

### *Statute of Limitations*

Title 29 U.S.C. § 1113 provides:
(a) No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

■ In short, the ERISA limitation period of six years runs from the date of the breach or violation, unless the defendant can show the plaintiff had actual or constructive knowledge of the breach or violation, in which case the three year period runs from the time the plaintiff gained such knowledge. *Fink v. National Savings & Trust Company,* 772 F.2d 951, 956

(D.C.Cir.1985). Constructive knowledge is obtained through reports, commonly called "Forms 5500," which periodically are filed with the Secretary. *Id.* Continuing violations do not toll the statute of limitations. *See id.* at 956–58 (although plaintiffs alleged more recent breaches of fiduciary duty, claims relating to breach of fiduciary duty that occurred more than six years before plaintiffs filed complaint were time-barred).

■ Interested parties had constructive knowledge as early as July 29, 1980, that National Western was violating 29 U.S.C. § 1104(a) and 29 U.S.C. 1106(a) and (b) because the Form 5500 filed on that date indicates that National Western invested all contributions to the Plan in National Western insurance and/or annuity contracts. Therefore, under 29 U.S.C. § 1113(a)(2), the three-year statute of limitations period applies to claims involving self-dealing. In sum, liability on claims concerning violations of 29 U.S.C. § 1104(a)—except National Western's failure to investigate the merits of the investment and alleged failure to diversify the Plan's assets—and 29 U.S.C. §§ 1106(a) and (b) arising more than three years before plaintiffs filed their complaint, *i.e.,* before June 26, 1981, is time-barred. In the absence of a showing that any plaintiff had actual notice of National Western's breaches, liability on claims concerning National Western's failure to investigate the merits of the investment and its alleged failure to ensure the Plan's assets were diversified that arose more than six years before plaintiffs filed their complaint, *i.e.,* before June 26, 1978, is time-barred.

### *Fiduciary Status of Defendants*

■ An action for breach of fiduciary duty may be brought only against a fiduciary of the Plan. Title 29 U.S.C. § 1002(21)(A), which defines a fiduciary, provides in pertinent part:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or

control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Title 29 U.S.C. § 1102(a) provides:

(1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

(2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

With the exception of the named fiduciary, ERISA ties the fiduciary status of an entity to its responsibilities under the plan. *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir.1984).

■ National Western is a fiduciary of the Plan for two reasons: First, National Western is a "named fiduciary" pursuant to the terms of the Plan instrument.[1] Although generally an entity holds fiduciary status only to the extent it exercises control over a plan, a "named fiduciary" holds fiduciary status for all purposes. *Birmingham v. Sogen–Swiss Int'l Corp. Retirement Plan*, 718 F.2d 515, 521–22 (2d Cir.1983) (valid plan under ERISA must designate a "named fiduciary" so that responsibility for managing and operating the plan—and liability for mismanagement—are focused with a degree of certainty); *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir.1982) (party held fiduciary status only to extent it rendered investment advice because it was not a "named fiduciary"). National Western, therefore, is a fiduciary for all purposes of the Plan. National Western also holds fiduciary status —albeit on a limited basis—for a second reason. "When a contract grants an insurer discretionary authority, even though the contract itself is the product of an arm's length bargain, the insurer may be a fiduciary." *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d 732, 737 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). National Western, in its role as sole source of annuity contracts for the Plan, exercises discretion because it determines the amount of "excess interest" paid on the Plan's annuity contracts. National Western, therefore, is also a fiduciary with regard to the amount of excess interest paid on the Plan's annuity contracts.

■ The trustees are not fiduciaries so far as investment decisions and surrender charges are concerned. First, the Plan instrument does not accord the trustees any discretionary authority over investment decisions because the Plan instrument requires the trustees to invest all funds in National Western annuity contracts.[2] The

---

1. Article 2.1(12) of the Plan instrument provides:

   PLAN ADMINISTRATOR shall be National Western Life Insurance Company and shall have such duties and powers as are hereinafter provided.
   Article 2.1(13) of the Plan instrument provides:
   NAMED FIDUCIARY, pursuant to Section 402(a)(2) of the Employee Retirement Income Security Act of 1974, as amended from time to time, shall be the Plan Administrator.

2. Article 4.2 of the Plan instrument provides in part:

   The Trustees shall invest all of the funds in group annuity contracts of the flexible premium type.
   Article 2.3 of the Plan instrument provides:
   (1) The ISSUING COMPANY is National Western Life Insurance Company which, upon application by the Trustee [*sic*] pursuant to the Pension Plan, has issued one or more insurance contracts under the Plan.
   (2) An INSURANCE CONTRACT OR POLICY is any form of Life Insurance or Annuity issued by such Life Insurance Company.

lack of discretion on the part of the trustees does not violate ERISA, because 29 U.S.C. § 1103(b) expressly excludes plans whose assets consist of insurance contracts from the requirement that the trustees of a plan have exclusive authority to manage the assets of a plan. Secondly, the Plan instrument does not name the trustees as fiduciaries. Thirdly, plaintiffs have not produced sufficient evidence to show that the trustees are directors or large shareholders of National Western.[3] *See, e.g., Margaret Hall Foundation v. Atlantic Financial Management*, 572 F.Supp. 1475, 1485 (D.Mass.1983) (allegations that defendant is an officer, director, and large shareholder of the company managing a plan's assets sufficient to raise an issue of fact as to whether defendant was a fiduciary with respect to the plan). The trustees, therefore, are not fiduciaries so far as investment decisions and surrender charges are concerned, and thus are not liable for the fiduciary breaches discussed below.[4]

### Violation of Prudent Man and Exclusive Purpose Rules

The Court cannot determine the extent to which National Western violated the prudent man and exclusive purpose rules. These common law concepts are embodied in 29 U.S.C. § 1104(a), which provides in part:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.

■ Section 1104(a) requires fiduciaries to employ proper methods to investigate the merits of the investment. *Fink*, 772 F.2d at 957; *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir.1984), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). A plan instrument cannot override statutorily imposed requirements. 29 U.S. C. § 1104(a)(1)(D). *See also, e.g., Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees*, 740 F.2d 454, 456 (6th Cir.1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985). A plan fiduciary must avoid a conflict between federal law and private contract. *See, e.g., Leigh*, 727 F.2d at 132 (preferred course of action for fiduciary suffering from conflict of interest is to resign and clear the way for appointment of genuinely neutral trustee); *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.1982), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982) (discussing alternatives to avoid conflict of interest).

■ National Western violated 29 U.S.C. § 1104(a). National Western failed to ana-

---

**3.** National Western's annual report filed with the Securities and Exchange Commission on April 2, 1984, at p. 53, shows only that executive officers and directors as a group owned certain percentages of stock. The report does not indicate the quantity of stock, if any, owned by the trustees.

**4.** The affidavit which trustee Boswell submitted in support of the trustees' motion for summary judgment indicates that Boswell exercises discretion by determining the amount of excess interest National Western pays on the annuity contracts. Boswell, however, exercises this discretion as an officer of National Western, not as a trustee of the Plan. Boswell, therefore, does not hold fiduciary status concerning the rate of excess interest paid on the annuity contracts.

lyze the merits of investing all the Plan's assets in National Western annuity contracts because the Plan instrument requires all Plan assets to be used toward the purchase of National Western annuity contracts, precluding National Western from analyzing whether that investment best suits the participants' needs. The Court does not hold that a plan may not use all its assets to purchase insurance contracts; rather, National Western failed to investigate the merits of purchasing contracts from a particular insurance company.

National Western may not have acted for the exclusive purpose of the beneficiaries. National Western determined the rate of excess interest and the surrender charges when it had split loyalties: first, a loyalty to the beneficiaries of the Plan to maximize their benefit by keeping excess interest rates high and surrender charges low, and second, a loyalty to National Western's shareholders to maximize their dividends by diminishing excess interest rates and increasing surrender charges. The Court cannot resolve from the conflicting facts in the record whether National Western acted for the exclusive purpose of the beneficiaries.

■ National Western may have breached its duty regarding diversification of the Plan's assets. A plan may invest solely in annuity contracts so long as the investments underlying the contracts are diversified.

> ... [W]hether the plan assets are sufficiently diversified is to be determined by examining the ultimate investment of the plan assets.... Also, generally a plan may be invested wholly in insurance or annuity contracts without violating the diversification rules, since generally an insurance company's assets are to be invested in a diversified manner.

Conference Report, H.R. 93–1280, U.S.Code Cong. & Admin.News 1974, pp. 4639, 5085. The Court cannot determine from the conflicting factual assertions in the record whether National Western properly ensured that the Plan's investments were diversified.

### Violation of Prohibited Transaction Rules

■ National Western may receive "no more than reasonable compensation" for the value of its services rendered in connection with the Plan, even though, as discussed below, National Western engaged in prohibited transactions. 29 U.S.C. §§ 1108(b)(2) and (c)(2). However, to the extent National Western received more than reasonable compensation for its services, National Western violated the prohibited transaction rules, 29 U.S.C. § 1106(a) and (b), and no statute or regulation excludes National Western from the application of those rules. National Western may not seek exclusion from the prohibited transaction rules through 29 U.S.C. § 1108(b)(5), because that section would apply only if National Western were wholly owned "by any person which is a party in interest with respect to the plan," and National Western is not wholly owned by anyone. Similarly, National Western may not seek exclusion from the prohibited transaction rules through Prohibited Transaction Class Exemption 77–9, 42 Fed.Reg. 32395, because that exemption does not apply to plan administrators or named fiduciaries and National Western is both a plan administrator and the named fiduciary of the Plan. The prohibited transaction rules apply, therefore, to the extent National Western received more than reasonable compensation for its services.

■ One of the prohibited transactions, the prohibition against self-dealing, is embodied in 29 U.S.C. § 1106(b), which provides:

> A fiduciary with respect to a plan shall not—
>
> (1) deal with the assets of the plan in his own interest or for his own account,
>
> (2) in his individual or in any other capacity act in any transaction involving, the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
>
> (3) receive any consideration for his own personal account from any party

dealing with such plan in connection with a transaction involving the assets of the plan.

This section *per se* prohibits certain transactions, whether or not the transactions actually lead to unfair self-dealing. *Leigh,* 727 F.2d at 123.

National Western violated § 1106(b) because it engaged in a transaction involving the Plan in which National Western's interests were adverse to the Plan's interests. National Western's interest in the transaction involving the Plan's purchase of group annuity contracts was to maximize National Western's profits by paying the lowest permissible return on the Plan's investment and by charging the maximum permissible surrender charge, while the beneficiaries' interest in the transaction was to maximize the sum of their investment by receiving the highest permissible rate of return and by minimizing—or eliminating—any surrender charges. National Western, therefore, violated § 1106(b).

■■■ National Western also engaged in a second prohibited transaction, set forth in 29 U.S.C. § 1106(a), which provides in pertinent part:

> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

>> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;

>> \* \* \* \* \* \*

>> (C) furnishing of goods, services, or facilities between the plan and a party in interest;

>> (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

A "party in interest" is defined in 29 U.S.C. § 1002(14), which provides in part:

> (14) The term "party in interest" means, as to an employee benefit plan—

> (A) any fiduciary ... of such employee benefit plan.

Title 29 of U.S.C. § 1106(a) prohibits *per se* certain transactions, regardless of whether the transaction leads to unfair self-dealing. *Leigh,* 727 F.2d at 123.

Regardless of whether annuity contracts are deemed property or services, National Western violated § 1106(a)(1)(A) or (C) because it caused the Plan to engage in a transaction constituting a sale of property or services (*i.e.,* annuity contracts) between the Plan and a party in interest (*i.e.,* a fiduciary, National Western). Similarly, National Western violated § 1106(a)(1)(D) because it caused the Plan to engage in a transaction constituting the transfer to a party in interest (*i.e.,* a fiduciary, National Western) of assets of the Plan (*i.e.,* the funds used to buy annuity contracts). National Western, therefore, violated § 1106(a).

## *Violation of ERISA Minimum Vesting and Accrual Standards*

■■ Plaintiffs make a prima facie case that the surrender charge made a part of the Plan effective August 2, 1983, violates 29 U.S.C. § 1053(a), which prohibits certain forfeitures of benefits, and 29 U.S.C. § 1054(g), which prohibits certain reductions of accrued benefits. In opposition, National Western makes various assertions of fact to rebut plaintiffs' prima facie case, but National Western fails to support its assertions by pointing to facts in the record. After adequate time for discovery, a party opposing summary judgment must point to facts in the record to support its allegations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed. 2d 265 (1986); Fed.R.Civ.P. 56(e). Accordingly, the Court grants summary judgment in favor of plaintiffs on their claims of violation of 29 U.S.C. § 1053(a) and 29 U.S.C. § 1054(g).

An appropriate Order accompanies this Memorandum Opinion.

## ORDER

This case now is before the Court on cross-motions for summary judgment. For the reasons stated in the accompanying Memorandum Opinion, upon consideration

of plaintiffs' motion for summary judgment, it hereby is

ORDERED, that the motion is granted in part and denied in part.

Upon consideration of defendants National Western's and the Builders, Contractors and Employees Retirement Trust and Pension Plan's motion for summary judgment, it hereby further is

ORDERED, that the motion is granted in part and denied in part.

Upon consideration of defendants Richard Boswell's, John R. Howard's, and Richard Andrew's motion for summary judgment, it hereby further is

ORDERED, that the motion is granted in part and denied in part.

Upon consideration of National Western's and the Builders, Contractors and Employees Retirement Trust and Pension Plan's motion to reconsider the issue of punitive damages, it hereby further is

ORDERED, that the motion is granted and plaintiffs' claim for punitive damages is stricken. The case now may now proceed to pretrial before Magistrate Attridge.

SO ORDERED.