724 F.Supp. 1033 (1989)
Robert ARAKELIAN, et al., Plaintiffs,
v.
NATIONAL WESTERN LIFE INSURANCE COMPANY, et al., Defendants.
Civ. A. No. 84-1953 SSH.
United States District Court, District of Columbia.
November 6, 1989.
*1034 Laurence E. Gold, Washington, D.C., for plaintiffs.
Jeffrey J. Hines, Baltimore, Md., for Benefits, Inc.
Gerald I. Katz, Washington, D.C., and Mark J. Stone and Teresa Ann Keough, Vienna, Va., for United Masonry.
Gerald I. Holtz, Washington, D.C., and Charles Martinez, Baltimore, Md., for Builders Cont. & Emp. Ret.
George Beall, James Eyler and Edward Adkins, Baltimore, Md., Richard G. Vernon, Washington, D.C., and Will D. Davis, Austin, Tex., for Nat. Western.
John T. Coyne and David P. Durbin, Washington, D.C., and David Latzko, Vienna, Va., Trustees.
Tarrant H. Lomax, Washington, D.C., for Halco Engineering and Wilcon.

MEMORANDUM OPINION
STANLEY S. HARRIS, District Judge.
Defendants filed a motion requesting the Court to reconsider four rulings made in its Memorandum opinion and Order dated October 30, 1987; plaintiffs opposed; and defendants replied. On consideration of the parties' pleadings and the entire record herein, the Court denies defendants' motion for reconsideration and confirms its October 1987 opinion. Arakelian v. National Western Life Insurance Co., 680 F.Supp. 400 (D.D.C.1987).
First, National Western and the other defendants (henceforth referred to as National Western) ask the Court to reconsider its finding that they violated the "Prudent Man" rule, set forth in 29 U.S.C. § 1104(a)(1)(B). In its October 1987 opinion, the Court held that "National Western failed to analyze the merits of investing all the Plan's assets in National Western annuity contracts because the Plan instrument requires all Plan assets to be used toward the purchase of National Western annuity contracts, precluding National Western from analyzing whether that investment best suits the participants' needs." Arakelian, 680 F.Supp. at 405. Defendants claim that facts already in the record of this case establish that National Western did engage in such an analysis, and thus a genuine issue of material fact exists. Specifically, National Western refers the Court to four sources: (1) National Western's response to Plaintiff's First Request for Admissions; (2) National Western's Supplemental Response to Plaintiffs' Second Set of Interrogatories; (3) National Western's Statement of Points and Authorities in Opposition to Plaintiffs' Motion for Partial Summary Judgment; and (4) National Western's continual improvement of the Plan's underlying group annuity policies. In reviewing sources one through three, the Court finds that defendants still fail to offer any significant evidence to support their claim. In these sources, National Western states that it did obtain *1035 information with respect to various types of insurance and annuity policies through advertising material issued by other companies, trade journals, and attendance at presentations given by speakers familiar with the industry. National Western fails to point to one source which gives a material, concrete example of investigation. In no place does National Western specify what trade journals it looked at, what other companies' policies or advertising materials it examined, or what conferences defendants attended. National Western relies exclusively on its naked assertion that it did investigate.
A party against whom summary judgment is sought cannot rely on factually unsubstantiated, conclusory allegations to sustain its claim that questions of fact exist. Jacobson v. John Hancock Mutual Life Insurance Co., 662 F.Supp. 1103, 1106 (D.Conn.1987), citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). National Western cannot defeat plaintiffs' properly supported motion for summary judgment without offering any significant probative evidence. Id. at 1106, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (quoting First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). National Western's unsubstantiated claim that it did investigate alternatives and its argument that the Plan could not have been improved without such investigation are not enough to create a genuine issue of material fact. Therefore, the Court reaffirms its earlier conclusion that National Western violated the prudent man rule.
National Western further requests the Court to reconsider its entry of partial summary judgment ruling that National Western violated ERISA's minimum vesting and benefit accrual standards. In the October 1987 opinion the Court found that plaintiffs established a prima facie case that National Western, in amending the Plan in August 1983, violated 29 U.S.C. § 1053(a) and 29 U.S.C. § 1054(g). National Western claims that the record contains facts sufficient to raise significant questions of fact, and therefore that summary judgment on these issues was improperly granted.
National Western's argument that the amendment simply reallocates the front end administrative costs already established in the original Plan through surrender charges borne by those who prematurely "cash-in" is unpersuasive. Regardless of the proposed rationale behind the change, it remains evident to the Court that the amendment is in violation of § 1053(a) and § 1054(g). Section 1054(g) clearly states that the accrued benefit of a participant under a plan may not be decreased by an amendment of the Plan.[1] The original Plan may have allowed surrender charges to be considered in establishing the "Accrued Benefit"; however, it is undisputed that the original Plan did not impose any surrender charges. Thus, National Western's amendment establishing surrender charges decreases the accrued benefits of the participants in the Plan. The Court concludes, after a further in-depth review of the record and arguments, that the undisputed facts show that National Western's amendments violate the minimum vesting standards of ERISA and the prohibitions against plan amendments reducing accrued benefits, and affirms its earlier decision that plaintiffs are entitled to judgment on these issues as a matter of law.
National Western also seeks to have the Court reconsider its finding that National Western is a fiduciary, as defined in 29 U.S.C. § 1002(21)(A), with regard to the amount of excess interest paid on the Plan's annuity contracts. National Western alleges that the group annuity contracts issued to the Plan are a part of National Western's general asset account. National Western claims that once the assets are invested as a part of an insurance company's general account, they are not Plan assets for the purposes of ERISA; therefore, National Western is not subject *1036 to the fiduciary duties of ERISA by virtue of its setting the excess interest rates paid under those annuity contracts.
National Western, acting in its fiduciary role, invested the assets of the Plan in its own group annuity policy. The group annuity contracts issued by National Western to the Plan are not invested in a separate account but are invested in the general asset account of National Western. National Western then pays both "guaranteed interest" and "excess interest" on the group annuity contracts issued to the Plan. In its October 1987 opinion, the Court held that this creates a fiduciary responsibility with regard to the amount of interest paid on the Plan's annuity contracts. National Western has not presented any arguments which persuade the Court to change its opinion. The Court acknowledges that the general assets of an insurance company are not necessarily the assets of the Plan. However, by investing the assets of the Plan in its own annuity contracts, while retaining the discretion to determine the interest paid to the Plan, National Western places itself in a position of continued fiduciary responsibility. Courts and the Labor Department in Advisory Opinions have held that the variable part of the policy, and assets attributable thereto, are not considered guaranteed, and should be considered as plan assets subject to fiduciary rules. See, e.g., Pension & Welfare Benefit Programs Re: College Retirement Equities Fund, 78-8 A Op. Dept. of Labor (March 13, 1978); Jacobson, 662 F.Supp. 1103 (D.Conn.1987). Thus, the Court reaffirms its earlier decision that National Western is a fiduciary for the Plan in regard to interest generated by assets used to purchase National Western group annuity contracts.
The Court's decision is strengthened further by National Western's decision to invest the assets of the plan solely in its own annuity contracts. In doing so, National Western has created an inherent conflict of interest.[2] National Western has a loyalty to its shareholders to maximize their dividends by diminishing excess interest rates, and a conflicting loyalty to the beneficiaries of the Plan to maximize their benefits by keeping excess interest rates high. If National Western chooses to place itself in this precarious position, it must be willing to accept the consequences resulting from strict scrutiny of its decisions. National Western must be prepared to show members of the Plan that it fully investigated the investment options available, and that after taking into account the average or likely interest payments offered by National Western's annuity contracts and comparing them with other options, that a prudent man would have chosen to invest in the same manner. In addition, National Western must be prepared to show Plan members that the interest paid on the annuity accounts was not out-of-line with the rates of interest paid by similar plans sponsored by similar businesses, and that the amount of interest paid is in the best interests of the Plan.
For the foregoing reasons, defendants' motion for reconsideration is denied.
NOTES
[1] There are limited exceptions enumerated in § 1054(g) which do not apply in this case.
[2] The Court notes that if National Western had invested in another group's annuity policy, that group would not be in a fiduciary position vis-a-vis the Plan.