WESTOAK REALTY AND INVESTMENT COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Westoak Realty & Inv. Co. v. Commissioner
Docket No. 14302-89
United States Tax Court
T.C. Memo 1992-171; 1992 Tax Ct. Memo LEXIS 182; 63 T.C.M. (CCH) 2502; 14 Employee Benefits Cas. (BNA) 2874; March 24, 1992, Filed *182 Decision will be entered for respondent. James J. Sauter, for petitioner. James S. Stanis, for respondent. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in excise tax imposed under section 4975(a) as follows: Taxable Year Ending
Deficiency
July 31, 1979
$  9,772.20
July 31, 1980
16,413.25
July 31, 1981
7,542.80
July 31, 1982
1,426.75
July 31, 1983
1,426.75
The issues for decision are: (1) Whether a third party cotrustee agreement is effective on the date it was made or retroactively to an earlier date agreed to by the trustee. We hold the agreement was effective on the date it was made. (2) Whether the sales of customers' notes by petitioner to the Custom Builders Corp. profit sharing plan were not prohibited transactions under section 4975(c)(1) or (d) because they were exempt from the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, section 406(b), 88 Stat. 829, 879, 29 U.S.C. section 1106 (1988), and under section 4975(c)(2) under Department of Labor Prohibited Transaction Exemptions 81-8, 46 Fed. Reg. 7511 (Jan. 23, 1981), and 88-59 (formerly 82-87), *183 53 Fed. Reg. 24811 (June 30, 1988). We hold that these sales are not exempt under Prohibited Transaction Exemptions 81-8 or 88-59 because they violated ERISA section 406(b) and section 4975(c)(1)(E). Unless stated otherwise, all section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT 1. Petitioner
Petitioner is a Missouri corporation with its principal place of business in St. Louis, Missouri. Petitioner was a mortgage lending institution licensed by the State of Missouri. Petitioner was a wholly owned subsidiary of Custom Builders Corp. (Custom Builders), a Missouri corporation engaged in the home building business in the St. Louis area. William McGinnis (McGinnis) owned all of the stock of Custom Builders. McGinnis was the president of both Custom Builders and petitioner. The treasurer was Herbert A. Graham, C.P.A. Thelma R. Marchbanks was the corporate secretary and executive director. Custom Builders also had its principal place of business at the same address as petitioner. 2. Custom Builders Profit Sharing Plan and *184 Westoak Realty Profit Sharing Plan
Custom Builders sponsored a profit sharing plan with an accompanying trust entitled the Custom Builders Corp. Profit Sharing Plan (Custom Builders profit sharing plan). The effective date of the Custom Builders profit sharing plan was July 31, 1972. The plan year ended July 31. McGinnis and his wife, who was also an employee of Custom Builders, were participants in the Custom Builders profit sharing plan as were all other eligible employees of Custom Builders. The Custom Builders profit sharing plan was a trust described in section 401(a) which formed part of a plan exempt from tax under section 501(a). 3. Sales of Petitioner's Notes to the Custom Builders Profit Sharing Plan
Petitioner made construction loans to individuals who purchased homes built by Custom Builders. These loans were evidenced by notes payable to petitioner and recorded, with first deeds of trust to petitioner. These customer notes originated after the customers were screened by petitioner's loan board, following an independent audit. Title to the real estate held as security for the notes was insured by title insurance. In 1979 and 1980 petitioner sold the *185 following notes receivable, with first deeds of trust, to the Custom Builders profit sharing plan: Interest
Balance Due
Date
Called for
on note on
Sales
Date
Note
Sold
on Note
Date of Sale
Price
Repaid
Bourner #1
2-13-79
8.75%
$ 42,150
$ 37,935.00
4-10-80 Going #1
2-13-79
8.75
25,825
20,660.00
10-7-82 Going #2
2-13-79
10.00
2,710
2,168.00
10-7-82 Scott
7-29-79
8.75
39,147
35,234.10
5-14-80 Campbell
7-29-79
8.75
85,612
77,050.80
11-2-79 12-13-79
Caldwell
1-29-80
9.00
59,595
53,635.50
10-1-80 Kintz
1-29-80
9.75
62,726
56,453.40
11-4-80 Bourner #2
1-29-80
12.00
10,500
9,450.00
4-10-80 Interest rates charged by many institutions which financed home construction in the St. Louis area in the late 1970s and early 1980s rose dramatically. The notes in issue were short-term construction notes and were sold by petitioner to the Custom Builders profit sharing plan at discounts of 10 to 20 percent. The yield to the plan from the customer notes was good. The Custom Builders profit sharing plan received payment at face value when permanent financing was obtained from unrelated established mortgage lenders *186 upon closing. The notes were secured by recorded first deeds of trust on the properties under construction and, in the case of the Bourner and Going notes, by second deeds of trust on other real property of the respective buyers. McGinnis decided to sell the notes to the plan, and decided the price to be paid. Petitioner sold the notes to the Custom Builders profit sharing plan to generate cash. Thelma Marchbanks was a member of petitioner's loan board. She chose the eight customer notes to be sold to the plan, using the same criteria she used to put together credit line packages of customer notes for collateral on loans from the Tower Grove Bank and Trust Co. (Tower Grove Bank). Harry Zekind, petitioner's profit sharing plan consultant, advised McGinnis that he could sell the notes to the Custom Builders profit sharing plan. 4. Cotrustee Agreement with Tower Grove Bank
On November 5, 1980, Custom Builders amended the Custom Builders profit sharing plan. The amendment named Tower Grove Bank as a cotrustee of the Custom Builders profit sharing plan. Tower Grove Bank was a mortgage lending institution licensed by the State of Missouri. The amendment stated that the *187 effective date of Tower Grove Bank's cotrusteeship was August 1, 1978. McGinnis was the sole trustee of the Custom Builders profit sharing plan until Tower Grove Bank became a cotrustee. Harry Zekind, attorney and actuary for the Custom Builders profit sharing plan, arranged for Tower Grove Bank to be a cotrustee. Under the plan amendment, Tower Grove Bank's only duty as cotrustee was "to approve investments of * * * [the Custom Builders' profit sharing] Trust upon which a grant of exemption may be obtained to the extent and under conditions described in any such exemption granted by the Department of Labor under the prohibited transactions rules." On January 25, 1982, Tower Grove Bank resigned as cotrustee of the Custom Builders profit sharing plan because it was against bank policy to act as cotrustee of a profit sharing trust unless the bank controlled the investment of the trust assets. Tower Grove Bank had engaged in no trust administration activity as cotrustee of the Custom Builders profit sharing plan. Tower Grove Bank had accepted other customer notes from petitioner as collateral for the credit line for loans to petitioner. Petitioner also maintained a qualified profit *188 sharing plan for its employees. The notice of deficiency is presumed to be correct and petitioner bears the burden of overcoming this presumption. Welch v. Helvering, 290 U.S. 111 (1933). 1. Excise Tax on Prohibited Transactions
Section 4975(a) and (b) imposes a two-tier excise tax on prohibited transactions between retirement plans and disqualified persons. Section 4975(a) imposes a 5-percent tax on the amount involved, as defined by section 4975(f)(4), for each prohibited transaction. The tax is payable by any disqualified person who participates in the prohibited transaction. Sec. 4975(a). A prohibited transaction [1] includes any direct or indirect sale or exchange of property between a plan and a disqualified person, section 4975(c)(1)(A), and any direct or indirect act by a disqualified person who is a fiduciary wherein he deals with the income or assets of a plan in his own interest or on his own account. Sec. 4975(c)(1)(E). A disqualified person [2] includes an owner of 50 percent or more of the stock of a corporation which is an employer any of whose employees are covered by the plan. Sec. 4975(e)(2)(C) and (E). *189 Section 4975(b) imposes a second tier tax equal to 100 percent of the amount involved if a prohibited transaction is not timely corrected after imposition of the first tier tax. Respondent determined petitioner's deficiency under the first tier tax applicable to prohibited transactions. Sec. 4975(a). Respondent did not determine the second tier tax under section 4975(b). We find that petitioner engaged in prohibited transactions as defined by section 4975(c)(1)(A) and (E). The Custom Builders profit sharing plan was a plan described in section 4975(e)(1). Under section 4975(e)(2)(C) Custom Builders is a disqualified person with respect to the Custom Builders profit sharing plan. Petitioner, a wholly owned subsidiary of Custom Builders, is thus a disqualified person with respect to the Custom Builders profit sharing plan under section 4975(e)(2)(G). Accordingly, petitioner's sale of customer notes to the plan is a prohibited transaction under section 4975(c)(1)(A). 2. Can a Cotrustee Be Appointed Retroactively? The transactions at issue in this case occurred in 1979 and early 1980. McGinnis was sole trustee of the plan before Tower Grove Bank's appointment as cotrustee. *190 Tower Grove Bank was named as a cotrustee of the plan by a plan amendment dated November 5, 1980. However, by its terms, the amendment was effective August 1, 1978. Petitioner argues that Tower Grove Bank's trusteeship was effective August 1, 1978, and that this cures any prohibited transaction resulting from McGinnis serving as sole trustee. Citing Rev. Rul. 82-66, 1982-1 C.B. 61, petitioner argues that the appointment of a cotrustee can be retroactive under the remedial amendment period of the pension law changes of the Revenue Act of 1978 as long as the change does not reduce the level of employee benefit rights. Petitioner also argues that at trial respondent's counsel agreed with Mr. Zekind that retroactive plan amendments were allowed under these circumstances. However, we do not read respondent's counsel's questions to Mr. Zekind to be a concession of this point. Respondent contends that the November 5, 1980, plan amendment was retroactive for benefits but not for the change in trusteeship. Respondent contends that the cotrustee agreement was not effective before November 5, 1980, and that Tower Grove Bank was not a trustee on the dates the *191 notes were sold by petitioner to the plan. We conclude that petitioner's claim that the trustee agreement with Tower Grove Bank should be given retroactive effect, and that this cures the prohibited transaction to which respondent determined that the first tier tax applies, is at odds with the structure of the tax on prohibited transactions under section 4975. The second tier tax under section 4975(b) does not apply if there is a timely correction after the transaction occurred. In this case respondent did not determine that the second tier tax applied because the notes were sold by the pension plan within the correction period. However, petitioner seeks to use the purported retroactive appointment of Tower Grove Bank to avoid the first tier tax. We think this is an attempt to obtain a benefit from a claimed correction beyond which the law provides. Section 401(b)[3] generally allows certain retroactive changes to a plan to be made by the end of the plan year in which it must comply with ERISA. Sec. 1.401(b)-1(c), Income Tax Regs. However, we do not believe section 401(b) permits the appointment of a cotrustee by retroactive plan amendment. Section 401(b) addresses the retroactive *192 amendment of a plan in order to qualify the plan under section 401(a). In this case, the plan is a qualified plan that has engaged in prohibited transactions. We do not believe section 401(b) permits the retroactive amendment of a plan to correct or undo a prohibited transaction. *193 3. Effect of Violations of Section 4975(c)(1)(E) and ERISA Section 406(b) on Eligibility for Prohibited Transaction Exemptions 81-8 and 88-59
Petitioner does not dispute that the sales of the notes were prohibited transactions under section 4975, but contends that the disputed sales are exempt from tax under section 4975(a) on the grounds that they fall within Prohibited Transaction Exemptions (PTE) 81-8, 46 Fed. Reg. 7511 (Jan. 23, 1981), and 88-59 (formerly PTE 82-87), 53 Fed. Reg. 24811 (June 30, 1988). Section 408(a) of ERISA, Pub. L. 93-406, 88 Stat. 829, 883, 29 U.S.C. section 1108(a) (1988), provides that the Secretary of Labor shall establish a procedure for granting exemptions from the prohibited transactions rules for transactions or classes of transactions. The Secretary of Labor may not grant an exemption without finding that the proposed exemption is administratively feasible, in the interests of the plan participants and beneficiaries, and protective of the rights of plan participants and beneficiaries. ERISA sec. 408(a). On January 23, 1981, the Secretary of Labor issued PTE 81-8, supra, effective January 1, 1975, to *194 permit certain investments by employee benefit plans in short-term instruments. PTE 81-8 was amended on April 9, 1985, 50 Fed. Reg. 14043, to expand the list of permitted investments. PTE 82-87 was issued on May 18, 1982, 47 Fed. Reg. 21331, effective January 1, 1975, to permit qualified retirement plans to invest in residential mortgage loans under certain circumstances. PTE 82-87 was amended and redesignated PTE 88-59, 53 Fed. Reg. 24811 (June 30, 1988). The General Information sections in PTE's 81-8 and 88-59 provide they do not apply to transactions prohibited under ERISA section 406(b) [4] and sections 4975(c)(1)(E) and (F). Respondent argues that these transactions violate those sections, and so these exemptions do not apply. *195 Respondent contends that McGinnis was a fiduciary and thereby a disqualified person under section 4975(e)(2)(A). In addition, because McGinnis owned 100 percent of the stock of the employer whose employees were covered by the plan (Custom Builders), he was also a disqualified person under section 4975(e)(2)(E). McGinnis was the sole trustee (fiduciary) of the Custom Builders Profit Sharing Trust when the notes were sold and, as such, had complete control over the management and investment of plan assets. At the same time, McGinnis was the president and sole owner of Custom Builders and petitioner. He controlled petitioner's decision to sell the notes to the profit sharing plan. Any benefit to petitioner from the sales of the notes was for the benefit of McGinnis. By acting on both sides of the transaction McGinnis dealt with plan assets for his own interest and account. In Leigh v. Engle, 727 F.2d 113 (7th Cir. 1984), the court, in finding a violation of ERISA section 406(b), 29 U.S.C. section 1106(b) (1988), ruled that the terms "parties in interest" and "deal * * * in his own interest" in those two sections should be read broadly. Therefore, we conclude *196 that McGinnis was a party in interest dealing in his own interest. Courts have held such self-dealing to violate ERISA section 406(b), 29 U.S.C. section 1106(b). In Marshall v. Kelly, 465 F. Supp. 341 (W.D. Okla. 1978), the defendant was the president and sole shareholder of a construction company and was during the relevant period either a cotrustee or the sole trustee of a profit sharing plan sponsored by his construction company. The defendant, as trustee, caused the plan to renew loans to the construction company and caused the plan to lend money to him. The Court decided that by these acts the defendant dealt with plan assets in his own interest in violation of ERISA section 406(b), 29 U.S.C. section 1106(b) (1988). In Arakelian v. National Western Life Insurance Co., 680 F. Supp. 400, 407 (D.D.C. 1987), the Court held that the defendant insurance company, the named trustee of the plan, violated ERISA section 406(b), 29 U.S.C. section 1106(b) (1988), by purchasing, as trustee annuity contracts for the plan from itself as the issuer of the annuity contracts. See also Gilliam v. Edwards, 492 F. Supp. 1255 (D.N.J. 1980). *197 We conclude that the sales of the notes in question violated ERISA section 406(b) and section 4975(c)(1)(E) which both prohibit self-dealing by fiduciaries. As discussed above, we disagree with petitioner's claim that the taint of the transactions (that is, petitioner's sale of the notes to the plan) was cured by the appointment of Tower Grove Bank as a cotrustee in November 1980. Because the sales of the notes violated ERISA section 406(b) and section 4975(c)(1)(E), we find that this exemption does not apply. Respondent also argues that petitioner fails to meet various requirements of both PTE's 81-8 and 88-59. However, we need not decide these issues in light of our holding above that petitioner is not eligible for either exemption. Decision will be entered for respondent. Footnotes
1. Sec. 4975(c) provides: (c) Prohibited Transaction. -- (1) GENERAL RULE. -- For purposes of this section, the term "prohibited transaction" means any direct or indirect -- (A) sale or exchange, or leasing, of any property between a plan and a disqualified person; * * * (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account * * * ↩
2. Sec. 4975(e) provides: (e) DEFINITIONS. -- * * * * (2) DISQUALIFIED PERSON. -- For purposes of this section, the term "disqualified person" means a person who is -- (A) a fiduciary; (B) a person providing services to the plan; (C) an employer any of whose employees are covered by the plan; (D) an employee organization any of whose members are covered by the plan; (E) an owner, direct or indirect, of 50 percent or more of -- (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation, (ii) the capital interest or the profits interest of a partnership, or (iii) the beneficial interest of a trust or unincorporated enterprise, which is an employer or an employee organization described in subparagraph (C) or (D); * * * * (H) an officer, director (or an individual having powers or responsibilities similar to those of officers or directors), a 10 percent or more shareholder, or a highly compensated employee (earning 10 percent or more of the yearly wages of an employer) of a person described in subparagraph (C), (D), (E), or (G); or * * * ↩
3. Section 401(b) provides: (b) CERTAIN RETROACTIVE CHANGES IN PLAN. -- A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying the requirements of subsection (a) for the period beginning with the date on which it was put into effect, or for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements, and ending with the time prescribed by law for filing the return of the employer for his taxable year in which such plan or amendment was adopted (including extensions thereof) or such later time as the Secretary may designate, if all provisions of the plan which are necessary to satisfy such requirements are in effect by the end of such period and have been made effective for all purposes for the whole of such period.↩
4. The Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93-406, sec. 406(b), 88 Stat. 829, 879, 29 U.S.C. sec. 1106 (1988), provides: (b) A fiduciary with respect to a plan shall not -- (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.↩