**Julia LUCAS, Plaintiff–Appellant,**

v.

**James H. BURNLEY, IV, Secretary of Transportation, Defendant–Appellee.**

No. 88–2807.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1989.

Decided July 24, 1989.

Rehearing and Rehearing In Banc Denied Aug. 23, 1989.

George Michael Chuzi (June D.W. Kalijarvi, Kalijarvi, Kalijarvi & Chuzi, P.C., on brief), for plaintiff-appellant.

Thomas Michael Christina, Associate Deputy Atty. Gen. (John R. Bolton, Asst. Atty. Gen., Henry E. Hudson, U.S. Atty., and Robert G. Greenspan, Appellate Staff, Civ. Div., on brief), for defendant-appellee.

Before ERVIN, Chief Judge, and WIDENER and MURNAGHAN, Circuit Judges.

ERVIN, Chief Judge:

Appellant Julia Lucas challenges the district court's decision against her in a Title VII [1] employment discrimination action she brought against her employer, the Federal Aviation Administration. Ms. Lucas, who is white, alleges that her employer engaged

---

1. 42 U.S.C. § 2000e *et seq.*

in racial discrimination when it promoted Rosa Wright, a less qualified black, to the position of Quality Assurance and Training Specialist. Following a bench trial, the district court found in favor of the government, on the grounds that it had articulated a legitimate, nondiscriminatory reason for its selection of Ms. Wright, and that appellant had failed to demonstrate that this reason was pretextual. While we hold that the district court erred in making some of its findings of fact, we affirm on the merits.

Lucas and Wright, who work for the Federal Aviation Administration ("FAA"), both applied for a Quality Assurance and Training Specialist ("QATS") position at the Flight Service Station ("FSS") in Leesburg, Virginia. A total of nineteen people applied for two such positions. Two local managers at the Leesburg facility, Gary Wilson and Ken Johnson, selected four finalists for the jobs on the basis of personal interviews they conducted with all but one of the applicants.[2] Edward Dietz, the manager at the facility, made the final selections, and he chose Ms. Wright and Sharon Hall.

At trial Ms. Lucas presented evidence that Wright did not have a current Pilot Weather Briefing ("PWB") Certificate at the time of her selection. Such a certificate is a requirement for the QATS position. Lucas also presented evidence demonstrating the subjective nature of the interview process, as well as the fact that Wright had, in the past, been given preferential treatment by the Leesburg management. Appellant also presented the testimony of five other Leesburg employees, who stated that race could have been a factor in Ms. Wright's selection.

Following the presentation of Lucas' case, the trial court granted the government's Rule 41(b) motion for dismissal, finding that Ms. Lucas had not established a *prima facie* case. Lucas appealed, and we reversed and remanded for trial. *Lucas v. Dole*, 835 F.2d 532 (4th Cir.1987) (*Lucas* I). Specifically, we found that Ms. Lucas had established a prima facie case of

racial discrimination because she had introduced evidence showing: (1) the promotion of an unqualified black (Wright); (2) irregular acts of favoritism toward Wright; (3) the questionable use of a subjective interviewing process; and (4) the opinion testimony of other employees that race was a factor. 835 F.2d at 534.

Following remand the trial resumed and the government presented its evidence. That evidence included the testimony of Patricia Reilly, a personnel staffing specialist in the FAA's Eastern regional personnel office, who drew up the vacancy announcement for the QATS' openings. Ms. Reilly testified that possession of a current PWB certificate was not a requirement for the QATS position. The vacancy announcement, which listed the minimum requirements for the job, made no reference to a PWB certificate. Ms. Reilly cited FAA Order 3330.1A as support for her testimony that the lack of a PWB certificate could be cured within sixty days after an employee was selected for a QATS position. The government did not introduce this order into evidence.

Ms. Reilly's testimony concerning the possession of a PWB certificate as a prerequisite for a QATS position directly contradicted an earlier admission made by the FAA in its answer to Ms. Lucas's complaint.

The government also presented the testimony of Edward Dietz, Gary Wilson and Ken Johnson, as evidence that the FAA had a legitimate, nondiscriminatory reason for promoting Ms. Wright rather than Ms. Lucas. Dietz had been the manager at the Leesburg facility since May, 1985, and he was responsible for making the final selections to fill the QATS openings. Johnson was Dietz's deputy, and Wilson was the Assistant Manager for Training at the Leesburg facility.

Wilson and Johnson's testimony essentially established that the interview process was entirely subjective, and that their rankings of the candidates was based solely on those interviews. Even after reviewing

---

**2.** One applicant withdrew voluntarily after getting another job.

their notes taken at those interviews, neither Wilson nor Johnson could explain why he had given Ms. Wright higher scores than Ms. Lucas. Additionally, Wilson testified that he had recommended Ms. Wright to Dietz for an initial temporary assignment to the QATS position because "she had experience instructing people to take the ATC exam, mostly minority types."

Dietz's testimony established that he believed the ability to maintain "interpersonal relationships" was the most important qualification for the QATS job, and that he had communicated this to Wilson and Johnson. He also stated that he felt Ms. Lucas had a confrontational personality, and that she would not fare well as an instructor. Additionally, Dietz testified that Ms. Wright's performance during her temporary assignment subconsciously entered into his decision to select her to fill the position permanently.

Both parties also introduced evidence concerning the racial environment at Leesburg. The government's witnesses, Suk and Herrell, testified that they were unaware of any favoritism towards blacks at the facility. Mr. Hamm, one of the appellant's witnesses, testified that white employees were often passed over for promotion in favor of less qualified blacks. Hamm felt this resulted from the fact that EEO concerns were taking precedence over operational considerations. He had previously met with evaluators from FAA headquarters to express his concern over this fact. Appellant's second witness, Mr. Maisal, testified that management was "cognizant" of race when it made promotions.

I. The PWB Certificate

Paragraph 10 of Ms. Lucas' complaint asserted:

A prerequisite to selection for a QATS position is possession of a current Pilot Weather Briefing Certificate from the Department of Commerce. The certificate lapses, and must be renewed, if the employee performs no related duties for one year.

The FAA admitted this assertion in paragraph ten of its answer.

In *Lucas* I, this court noted that "both parties agreed that a current certificate was a job requirement." 835 F.2d at 533 n. 5. Thus, evidence of Ms. Lucas' *prima facie* case included "the promotion of an underqualified black." *Id.* at 534.

The FAA handbook provides support for the conclusion that the QATS position requires a PWB certificate. That handbook states that "FSS personnel shall obtain a certificate of authority from the [National Weather Service] before performing ... [a] Pilot weather briefing." The handbook further mandates that the certificate must be renewed by means of an oral examination if the certified employee performs no briefing duties for more than a year. As best we can tell from the record, the QATS position includes briefing duties.

Despite this evidence the district court specifically found as fact that a PWB certificate is not a requirement for selection to the QATS job, and that Ms. Wright was fully qualified, even though she lacked a certificate. We reverse this finding because it is clearly erroneous.

The general rule is that "a party is bound by the admissions of his pleadings." *Best Canvas Products & Supplies v. Ploof Truck Lines*, 713 F.2d 618, 621 (11th Cir. 1983). *See also Action Manufacturing, Inc. v. Fairhaven Textile Corp.*, 790 F.2d 164, 165 (1st Cir.1986); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984); *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980) ("under federal law, stipulation and admissions in the pleadings are generally binding on the parties and the Court."); *State Farm Mutual Automobile Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir.1968) ("... judicial admissions are binding for the purpose of the case in which the admissions are made including appeals."). The FAA attempts to counter this standard rule by invoking Fed.R.Civ.Pro. 15(b), which provides in pertinent part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all

respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise the issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of those issues.

We decline, however, to apply Rule 15(b) to void the effectiveness of the FAA's judicial admissions. First, the plain language of 15(b), which speaks of "issues not raised by the pleadings", precludes the rule's application in this case. The certificate requirement was not only raised by the pleadings, it was admitted and therefore resolved by those pleadings. We fail to see how Rule 15(b) applies to the question of whether a judicial admission is binding.

Additionally, we find questionable the FAA's assertion that the certificate requirement issue was tried by the "implied consent" of the parties. The government claims that Lucas "reopened" this issue by introducing evidence to prove it. Appellee, therefore, was entitled to introduce evidence disproving the existence of a certificate requirement. The evidence introduced by Ms. Lucas and cited to by the FAA, however, all goes to the question of whether Ms. Wright was qualified for the QATS position.[3] Ms. Lucas introduced no evidence directly addressing the question of whether a PWB certificate is required for a QATS position. Appellant's evidence concerning Ms. Lucas's qualifications should not be viewed as reopening the question of whether the QATS jobs require PWB certificates.

■ Finally, we reject the blanket rule that the government urges us to adopt, that a failure to object to evidence[4] constitutes implied consent to try an issue already admitted in the pleadings. *See Stacy v. Aetna Casualty & Surety Co.,* 484 F.2d 289, 294 (5th Cir.1973) (Holding that the failure to oppose the introduction of evidence at variance with a judicial admission resulted in the admission being amended out of the pleadings pursuant to Rule 15(b)). It seems to us, however, that had the Federal Rules been intended to make the binding nature of a judicial admission so easily waivable, they would certainly contain a much more explicit provision than 15(b).

## II. The Disparate Treatment Claim

■ Once a plaintiff in an action such as this has established a prima facie case, an inference arises that unlawful discrimination was the reason for the employment action. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668 (1973). The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its action. *Id.* The plaintiff then has the opportunity to show that the stated reason is a mere pretext for a racially motivated decision. *Id.* at 804, 93 S.Ct. at 1285. Within this framework the ultimate burden of persuasion remains on the plaintiff to prove intentional discrimination. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

At trial the FAA argued that in selecting an individual to fill the QATS position its primary concern was to find someone with both the experience and the personal qualities necessary to be a successful teacher. Ms. Lucas, they asserted, lacked teaching experience and exhibited a "confrontational personality." Judge Hilton accepted these arguments, finding that the FAA had articulated a legitimate, nondiscriminatory reason for selecting Ms. Wright because she was

technically fully qualified to assume the responsibilities of the QATS position. In addition, Ms. Wright possessed maturity

---

**3.** We note that in its answer, the FAA had denied appellant's allegation that Ms. Wright was not qualified for the position.

**4.** In this case the evidence was the testimony of Ms. Reilly that a PWB certificate was not a

requirement for *selection* to the QATS position. We again note, however, that the government failed to introduce into evidence the FAA order which allegedly supported this testimony.

and excellent communication skills, which are important for success in a teaching position.

Ms. Lucas, on the other hand, had a confrontative personality, which would not be desirable in a position requiring the ability to relate well with others.

While we are somewhat concerned about the strength of the evidence supporting this conclusion, we nonetheless affirm the judgment in favor of the FAA. We again note that Ms. Lucas had the burden of demonstrating that the FAA's actions were racially motivated. See *Burdine, supra.* The record establishes that she failed to carry that burden. Appellant's evidence on this question consisted of the testimony of Johnson, Maisal, Terry and Hamm. Johnson testified that he recommended to Dietz that Wright be named to the temporary QATS position because "she had experience instructing people to take the ATC exam, mostly minority types." Maisal, Terry and Hamm were all employees at Leesburg. Maisal testified that he thought Ms. Wright's selection was based in part on race. Terry testified that Wright was *not* selected because she was black. Hamm testified that minority candidates would often be selected for positions at Leesburg even though there were other, nonminority, applicants who were more qualified.

The FAA's evidence on the issue of racial motivation included the testimony of Suk and Herrell, two more Leesburg employees. Both men rebutted the assertions that there was an air of racial favoritism at Leesburg. Appellee also demonstrated that a white male without a PWB certificate was one of the four top candidates considered by Dietz. He ultimately was not selected because of the time it would have taken to transfer him from another facility.

Finally, the FAA presented evidence that when making selections for the temporary QATS position, it needed someone immediately. They attempted to find a list of employees who had volunteered for or requested such work, but none could be found. There existed no formal procedures either for compiling such a list or dictating

how a selection should be made. Dietz therefore relied on the recommendation of his assistant, Ken Johnson. Johnson recommended Wright primarily because she had prior experience, and they did not have time to train people. There is no evidence in the record that Leesburg had employees other than Ms. Wright with such experience.

In light of all this evidence, we concur in the district court's finding that "[p]laintiff's nonselection for the QATS position was not based upon prohibited discrimination on the basis of her race," and this factual finding cannot be said to be clearly erroneous.

The judgment in favor of the FAA is hereby AFFIRMED.