**In re A. John ROBERTSON,
Jr., Debtor.**

**John H. REDFIELD, not individually,
but as Trustee in bankruptcy of A.
John Robertson, Jr., Plaintiff,**

v.

**PEAT, MARWICK, MITCHELL AND
COMPANY, A. John Robertson, Jr.,
and State Street Bank & Trust Co., as
Trustee of Peat Marwick 401(k) Plan
for Partners, Defendant.**

**Bankruptcy No. 86 B 9589.
Adv. No. 88 A 579.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 19, 1990.

Chad H. Gettleman, Gail Tuler Friedman, Adelman & Gettleman, Ltd., Chicago, Ill., for defendant Robertson.

Thomas P. Arden, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, Ill., Alan C. Kohn, Mark J. Bremer, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., Leonard P. Novello, Anthony J. Costantini, Office of Gen. Counsel, New York City, for defendants Peat, Marwick and State Street Bank.

John H. Redfield, Chicago, Ill., trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

The plaintiff, John H. Redfield, trustee in the bankruptcy of A. John Robertson, Jr.,

brought this action against Peat, Marwick, Mitchell and Company under 11 U.S.C. § 542 to recover $93,279.01 transferred to Robertson from his account balance in a qualified retirement plan.[1] This action was called for trial. At that time the parties stipulated as to all the evidence to be considered in the case. Both sides rested on the stipulated record. That record consists of: (1) a Joint Stipulation filed on February 8, 1990; (2) the transcript of Debtor's testimony at a hearing before this court on January 26, 1989 [2]; and (3) certain other exhibits whose authenticity has been stipulated to by the parties. The parties specifically agreed that this proceeding be adjudicated upon this record, "without the need for any live testimony or any further introduction of evidence." Joint Stipulation ¶ 15. On the eve of trial, Defendant Peat, Marwick sought leave to file an Amended Answer so as to withdraw certain admissions in its earlier pleading. That motion was denied, but without prejudice to its motion under Rule 15(b) F.R.Civ.P. (Bankr.R. 7015) to amend its pleadings to conform to the evidence. Now that the trial is completed on the stipulated record, the pleadings are deemed amended to conform to the evidence.

The stipulated record left many pertinent questions unanswered. Such is the risk of relying on stipulations with no opportunity for parties and the Court to probe deeper. However, such is the record on which we must determine whether the Plaintiff met his burden.

The court having considered the submitted evidence and the arguments of counsel, now makes and enters the following Findings of Fact and Conclusions of Law.

1. State Street Bank and Trust Company and A. John Robertson, Jr. were also named as defendants in this case. Pursuant to an agreement between the parties, an order was entered by this court on February 15, 1990 dismissing State Street Bank and Trust Company with prejudice. The Trustee has also dismissed his claim against the Debtor pursuant to a settlement agreement under which Trustee received; (1) $11,000 cash paid and to be paid by the Debtor; and (2)

Debtor's counsel's release of his priority claim against the estate for attorneys' fees exceeding $30,000. Peat, Marwick Ex. 19. Exhibits submitted by Peat, Marwick and Mitchell Co. are hereinafter cited "PM Ex.".

2. Debtor's testimony at the January 26, 1989 hearing will hereinafter be cited "Hearing Tr. at ——."

*Findings of Fact*

1. John H. Redfield is the duly appointed, qualified and acting Trustee in Bankruptcy ("Trustee") for A. John Robertson, Jr. ("Debtor") in the presently pending Chapter 7 bankruptcy case in this Court, case No. 86 B 9589.[3]

2. This adversary proceeding (hereinafter "the Adversary") arises in and relates to the aforesaid Chapter 7 case of Debtor.

3. Peat, Marwick, Mitchell and Company (presently known as Peat, Marwick, Main & Co.) ("Peat, Marwick") is a partnership engaged in public accounting.

4. Debtor was born on December 25, 1937. He is divorced and has no minor children.

5. Debtor was a partner of Peat, Marwick until May 31, 1985 when he was terminated. Joint Stip. ¶ 13. Prior to his termination, Debtor was a managing partner at Peat, Marwick's St. Louis, Missouri office.

6. On June 20, 1986, Debtor filed in this Court a voluntary petition under Chapter 11 of the Bankruptcy Code to which was appended a List of Creditors and List of 20 Largest Creditors.

7. The bankruptcy schedules filed by Debtor listed as property of the Debtor four accounts held by Peat, Marwick, namely: (1) a capital withdrawal account, (2) a profit withdrawal account, (3) a deferred compensation account, and (4) a 401(k) Plan account in the stated amount of "$73,662.00 (approx.)." [Schedule B—Statement of All Property of Debtor, including Rider to Schedule B–2(p) and Rider to Schedule B–2(s)]. The 401(k) Plan account referred to Debtor's account in the "Peat Marwick 401(k) Plan for Partners" (hereinafter the "401(k) Plan"). Those schedules, however, were not filed until July 30, 1986, and no motion was made or order entered allowing extension of time to file schedules beyond the 15 days after June 20, 1986 allowed by Bankr.R. 1007(c).

8. The Debtor's schedules claimed that the 401(k) Plan account was exempt property. [Schedule B–4—Property Claimed as Exempt [item 5] and Rider to Schedule B–2(s)].

9. On June 30, 1986, this court entered, and the Clerk served copies on creditors, of an order stating that "any objection to the debtor's claim of exempt property ... must be filed within 30 days after the above date [7/30/86] set for the meeting of creditors." (Order and Notice, June 30, 1986, docketed July 14, 1986.)

10. No objection to Debtor's claim of exemption regarding the 401(k) Plan account was filed within the thirty days following the first date set for meeting of creditors on July 30, 1986.

11. At no time prior to expiration of the thirty days following the first date set for meeting of creditors on July 30, 1986 did anyone request of or receive from the Court an extension of time for filing an objection to Debtor's claim of exemption.

12. At no time did the Debtor file any amendment to his list of property claimed as exempt.

13. On October 1, 1986 the debtor-in-possession filed a complaint (Adversary No. 86 A 1090) against Peat, Marwick seeking turnover of property and an accounting. Paragraph 6 of the Complaint alleged that:

> the debtor was a partner in Peat, Marwick and, in conjunction therewith, maintained various monetary accounts, including but not limited to: (a) Capital Withdrawal Account, (b) Profit Withdrawal Account, and (c) Deferred Compensation Account (hereinafter collectively referred to as the "Accounts").

The "Accounts" as thus defined excluded the 401(k) Plan account (see ¶ 8 supra). The Complaint further alleged that "the Accounts are in the possession, custody or control of Peat, Marwick" (¶ 7). The Complaint sought the remedy of an accounting as to "all funds" of the Debtor held by

---

**3.** Fact findings in Paragraphs 1–22 from an earlier opinion denying summary judgment in this proceeding, with an amendment to ¶ 5 thereof, were stipulated to in ¶ 4 of the Joint Stipulation.

*See John H. Redfield, Trustee v. Peat, Marwick, Mitchell and Co. (In re Robertson),* 105 B.R. 440, 443–45 (Bankr.N.D.Ill.1989).

Peat, Marwick (prayer, (c)). The remedy of turnover, however, was sought only as to:

> any and all funds in [Peat, Marwick's] possession, custody or control of any kind or nature whatsoever held for the benefit or account of the debtor (excluding only those funds of the debtor invested in the Peat Marwick 401(k) Plan)....

Prayer, (a). (Emphasis supplied.) The Complaint also sought "such other and further relief as this Court deems just and equitable." Prayer, (d).

14. On February 9, 1987, while the foregoing adversary proceeding against Peat, Marwick was still pending, Debtor's bankruptcy case was converted to a Chapter 7 case. This Court on March 12, 1987 issued an Order and Notice announcing a new meeting of creditors to commence April 7, 1987, and stating that "any objection to the debtor's claim of exempt property (Schedule B–2) must be filed within 30 days after the conclusion of the meeting of creditors."

15. On February 12, 1987, John H. Redfield, Esq. filed his acceptance of his appointment as trustee.

16. On April 6, 1987, the Trustee filed an objection to Debtor's claim of exemption regarding his 401(k) Plan account held by Peat, Marwick. The objection was served by mail upon Debtor's counsel and other persons, but not upon Debtor himself or upon Peat, Marwick.

17. The Trustee proceeded as Plaintiff, in the place and stead of Debtor, in Adversary No. 86 A 1090 against Peat, Marwick. At no time was the Complaint against Peat, Marwick amended.

18. On September 17, 1987 this Court in Adversary No. 86 A 1090 entered a consent order resolving the Trustee's Complaint against Peat, Marwick (Agreed Order, 9/17/87). The Order concluded as follows:

> [IT IS] ORDERED that the turnover of the funds from Peat, Marwick to the Trustee be and the same is with prejudice, and upon such turnover, this cause (Adversary No. 86 A 1090) shall be

deemed dismissed with prejudice as to Peat, Marwick.

19. Peat, Marwick made payment of $126,112.20 to the Trustee on or shortly after October 12, 1987 and thereby fully satisfied its turnover obligations under the Consent Order of September 17, 1987 in Adversary No. 86 A 1090. On October 27, 1987, after the agreed funds had been paid to Trustee, the adversary case and complaint were ordered dismissed with prejudice without costs pursuant to agreement by and between the parties, all matters having been settled. Neither order specified what accounts the funds turned over came from.

20. Debtor was aware that Peat, Marwick had turned over his partnership accounts to the Trustee in adversary proceeding No. 86 A 1090 and it was his understanding the funds (hereinafter "the 401(k) funds") held in Debtor's account with the 401(k) Plan were not involved. (Hearing Tr. 24, 31 & 46). Debtor believed the 401(k) funds were exempt property that he could properly take and use for his benefit. (Hearing Tr. 24–26, 31 & 39).

21. Sometime in August 1987 Debtor contacted "Peat, Marwick" to inquire how to withdraw the 401(k) funds. (Hearing Tr. 39.) Who exactly Debtor contacted is not clear from the stipulated evidence. Id. The necessary form was sent to Debtor. This form contained the Peat, Marwick logo in the upper left hand corner and is captioned "401(k) Plan." Debtor completed the form. Debtor testified that he submitted it to "Peat, Marwick" to obtain a lump sum withdrawal of his profit sharing account. The handwritten cover letter dated December 18, 1987 was addressed to "Chuck." PM Ex. 5. Who Chuck is, and what his employment position and responsibilities were, are not in evidence. Similarly, the form has a line designated "approved by" and is signed by Kathy Moriarity. Her position is also not in evidence.

22. The 401(k) Plan provides that a terminated partner may obtain withdrawal of his account in a lump sum.[4] PM Ex. 1,

---

4. The provisions of the 401(k) Plan governing withdrawal of funds and the composition and responsibilities of the Committee are discussed in detail below.

§ 6.2. A committee (hereinafter "the Committee") was created pursuant to the 401(k) Plan. The Committee was charged with administering the plan. It approved the withdrawal, and instructed Irving Trust, which as trustee for the 401(k) Plan had possession and custody of the funds, to make the disbursement to Debtor. However neither that Committee nor Irving Trust had actual notice or knowledge of Debtor's bankruptcy prior to Debtor's withdrawal of those funds. Joint Stipulation ¶ 7.

23. On or about March 7, 1988 the 401(k) funds amounting to $93,279.01 were turned over to Debtor. Debtor testified that he received the funds from "Peat, Marwick." Hearing Tr. at 41. At that time, Peat, Marwick knew of the pendency of Debtor's bankruptcy case. (Third Amended Complaint to Compel Turnover of Property, ¶ 5, filed 2/24/89, and Answer thereto). Outside counsel for Peat, Marwick and attorneys in Peat, Marwick's general counsel's office were aware of Debtor's bankruptcy at all relevant times, but were unaware until about December of 1988 that Debtor had requested or received the 401(k) funds. They learned about that after Debtor had received the funds. No attorney or other person associated with Peat, Marwick who knew of Debtor's bankruptcy had any knowledge of Debtor's request for or withdrawal of the 401(k) funds until after the withdrawal occurred. Id. at ¶ 8.

24. Larry LeGrand, a partner in Peat, Marwick's St. Louis office and a friend of Debtor, worked with special tax counsel for the debtor-in-possession during the Chapter 11 case herein and was accordingly then aware of Debtor's bankruptcy. Joint Stipulation ¶ 11.

25. Debtor paid $25,000 of the 401(k) funds to the Internal Revenue Service for federal income taxes. In addition, Debtor testified that he paid a total of $8,377 of the 401(k) funds to the States of New York, Illinois and California for income taxes. Debtor had scheduled each of these state income tax debts on Schedule A–1(d)(2) for an amount stated to be "unknown." The actual assessments for these state income tax liabilities were not received until after the Debtor's bankruptcy petition and schedules were filed. PM Exs. 15, 16 & 17.

26. The balance of the $93,279.01 of the 401(k) funds, after payment of the $33,377 in federal and state income taxes, was used to pay Debtor's living expenses. He had borrowed heavily during the bankruptcy from his sister and other creditors in order to support himself, which borrowings he paid back from the 401(k) funds.

27. Debtor testified that he has been virtually unemployable since leaving Peat, Marwick. He had submitted himself to treatment for alcoholism and is a recovering alcoholic. He has sought all types of work, including selling real estate and driving a cab, but without much success. He testified that his bankruptcy and his inability to secure a favorable reference from Peat, Marwick have hindered his efforts to find employment as a financial professional, the field of his expertise. This testimony was not rebutted. Under these circumstances and the evidence adduced, the 401(k) funds were necessary for the Debtor's support. Under terms of the Plan, he was entitled to withdraw those funds.

28. On August 3, 1988, the Trustee filed a second turnover complaint against Peat, Marwick, this pending adversary proceeding No. 88 A 0579 (hereinafter "the Adversary"), which seeks turnover of the 401(k) funds. As amended, this suit now seeks a money judgment against Peat, Marwick for the value of those funds and declaratory judgment against Debtor. (Third Amended Complaint to Compel Turnover of Property, filed 2/24/89). The only remaining named defendant in the Adversary is Peat, Marwick. Neither Irving Trust nor any entity designated as the Committee has been named or joined as a defendant.

### The 401(k) Plan

29. At all times mentioned in these Findings, the 401(k) Plan was a qualified retirement plan under the Internal Revenue Code and ERISA. Joint Stipulation ¶ 6.

30. All contributions to Debtor's 401(k) account were made voluntarily by Debtor. Id. at ¶ 10.

31. The 401(k) Plan contains an express spendthrift provision, which reads in full as follows:

> 6.15—*Spendthrift Clause.* To the extent permitted by law, none of the benefits payable hereunder shall be subject to the claims of any creditor of, or claimant against, any Participant or his Beneficiary, nor shall the same be subject to attachment, garnishment or other legal or equitable process by any creditor or claimant against the Participant or his Beneficiary, nor shall any Participant or his Beneficiary have any right to alienate, anticipate, commute, pledge, encumber, sell or assign any of such benefits, and any attempt to so alienate, commute, pledge, encumber, sell or assign the same shall be void and of no effect whatsoever.

PM Ex. 1, § 6.15. The trust agreement with Irving Trust likewise contains a spendthrift provision (Ex. 2, pp. 24–25, § 14.1).

32. The 401(k) Plan provides for the appointment of a Committee by Peat, Marwick. PM Ex. 1, § 8.2. "[T]he Employer [Peat, Marwick] shall have the sole responsibility for (i) appointing and removing Committee members...." Id. at § 8.1. Committee members are "appointed by, and serve at the pleasure of, the Employer." Id. at § 8.2. They are not compensated for their services for the Committee. Id.

33. The Committee "shall have the sole responsibility for the administration of this Plan" and its members "shall constitute 'named fiduciaries' for the purposes of [ERISA]." Id. at §§ 8.1 & 8.2. The Plan further provides that "the Committee shall make all determinations as to the right of any person to Benefits." Id. at § 8.3(a). Section 8.5 of the Plan lists numerous "powers and duties" the Committee shall have, including the power and duty "to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any Benefits hereunder." Id. at § 8.5(a). Finally, the Committee "shall" keep a minute book and was authorized to adopt such bylaws and regulations as it deemed desirable to conduct its affairs. Id. at § 8.7.

34. Peat, Marwick duly appointed a Committee pursuant to Article VIII of the 401(k) Plan. The Committee was in existence and functioning at all times mentioned herein, and was comprised of eight Peat, Marwick partners. The distribution of the 401(k) funds to Debtor in March of 1988 was made by Irving Trust at the direction of the Committee and with its approval. The parties stipulate that witnesses would, if called, testify that neither Irving Trust nor the Committee had actual notice or actual knowledge of Debtor's bankruptcy case prior to Debtor's withdrawal of the 401(k) funds, and the parties further stipulate that such testimony would be and is competent and admissible and shall be fully effective as evidence in the case as though the witnesses had testified at trial. Joint Stipulation at ¶ 7.

35. A participant in the 401(k) Plan may withdraw plan funds only in limited circumstances defined in the plan and only upon proper application to and approval by the Plan Committee. PM Ex. 1 at §§ 6.2, 6.3, 6.10, 6.11, 6.13, 8.3, 8.5, 8.8. A participant is entitled to a distribution of his vested interest upon termination of service, death or disability. Id. at § 6.2. Further, under the 401(k) Plan, a participant can withdraw funds in case of "Serious Financial hardship." Id. at § 6.10. Serious Financial Hardship includes the need for primary housing, education of the family, destruction of property, accident, sickness or temporary disability, death of a family member or layoff of Debtor. Id. A beneficiary can also borrow against his or her vested interest in the 401(k) Plan. Id. at § 6.11.

36. The 401(k) Plan also provides for appointment of a Trustee by Peat, Marwick. Id. at § 8.1. The Plan states that the Trustee "shall have the sole responsibility for (i) the administration of the Trust and (ii) the management of the assets held under the Trust, all as specifically provided in the Trust Agreement." Id. The Plan

further provides that "Distribution shall be made only upon receipt of instructions from the Committee and the Trustee shall have no responsibility whatsoever in determining the propriety of such distributions when made pursuant to said instructions." Id. at § 6.13.

37. Irving Trust Company ("Irving Trust") was trustee of the 401(k) Plan from July 1, 1984 to July 31, 1988. Irving Trust had possession and custody of Debtor's 401(k) funds at all times mentioned herein, until it distributed those funds to Debtor in March of 1988. Joint Stipulation ¶ 5.

38. The 401(k) Plan contains the following provision pertaining to Peat, Marwick (the "Employer") under the Plan:

> 9.6—Employer's Interest in Trust Fund. The Employer will have no right, title or interest in the Trust Fund and will not profit from it. No part of the Trust Fund will ever revert to the Employer, or be diverted for purposes other than the exclusive benefit of the Participants except as otherwise provided herein and by law.

PM Ex. 1 at § 9.6. The Employer does retain the right to terminate the Plan. The Plaintiff Trustee did not establish that Peat, Marwick had any fiduciary responsibilities under the Plan or otherwise exercised such authority.

39. Statements of fact that are contained in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

1. The United States District Courts have subject matter jurisdiction over proceedings arising in, arising under or related to a case under Title 11. 28 U.S.C. § 1334(b). Each District Court is authorized to refer these categories of proceedings to the Bankruptcy Judges of the district. 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois has made such a referral. Local Rule 2.33.

2. In matters which are core proceedings within 28 U.S.C. § 157(b)(2), a Bank-

ruptcy Judge is authorized to hear and determine the proceeding and enter final orders and judgments. 28 U.S.C. § 157(b)(1). A proceeding to turn over property of the estate is specifically enumerated as a core proceeding, as is a proceeding to determine whether a given piece of property is exempt property. 28 U.S.C. § 157(b)(2)(E), (B). Accordingly, this court has jurisdiction to and will enter a final judgment.

3. Trustee's "Third Amended Complaint to Compel Turnover of Property" seeks a judgment under 11 U.S.C. § 542 against Peat, Marwick for $93,279.01, the amount of the § 401(k) funds that were turned over to Debtor. Section 542 provides:

> (a) Except as provided in subsection (c) ... of this section, an entity ... *in possession, custody, or control*, during the case, of property that the trustee may use, sell, or lease under section 363 of [title 11], or that the debtor may exempt under section 522 of [title 11], shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

> . . . . .

> (c) ... [A]n entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate ... in good faith ... to an entity other than the trustee, with the same effect as to the entity making such transfer ... as if the case under [title 11] concerning the debtor had not been commenced.

[5] 11 U.S.C. § 542(a), (c) (emphasis added).

4. As the Supreme Court explained in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 202–03, 103 S.Ct. 2309, 2312, 76 L.Ed.2d 515 (1983), the property that a Trustee is authorized "to use, sell, or lease" under 11 U.S.C. § 363 is "any 'property of the estate.'" Accordingly, to succeed in his cause of action, Trustee must establish that: (1) the 401(k) funds were property of the estate within 11 U.S.C.

---

**5.** Special rules are applicable to a "custodian." The term custodian is defined in 11 U.S.C.

§ 101(10). Trustee has not argued that Peat, Marwick was a custodian.

§ 541(a), and not excluded from the estate under 11 U.S.C. § 541(c)(2); (2) the 401(k) funds were not property Debtor could exempt under 11 U.S.C. § 522; and (3) that the named defendant, Peat, Marwick was "in possession, custody or control" of the 401(k) funds after Debtor filed his bankruptcy case.

5. Peat Marwick contends that Trustee must prove each of these elements by clear and convincing evidence, not just by a preponderance of the evidence. The Supreme Court stated in *Maggio v. Zeitz,* 333 U.S. 56, 64, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948), a case decided long before the adoption of the Bankruptcy Code, that the Trustee must show that property is "in the possession of the party proceeded against" by "clear and convincing evidence." Although the Supreme Court's opinion does not give a detailed explanation of why this more rigorous standard is imposed, a number of cases have applied this standard under § 542 of the Bankruptcy Code, citing *Maggio* without discussion. *See, e.g., Evans v. Robbins,* 897 F.2d 966, 968 (8th Cir.1990); *In re Bloom,* 91 B.R. 445, 446 (Bankr.N.D.Ohio 1988). Judge Ginsberg in his treatise also states that "the party seeking turnover bears the burden of proof by clear and convincing evidence." 1 Robert E. Ginsberg, *Bankruptcy* § 5.04[a][1] at 422–23 (2nd ed. 1989). This court perceives no reason why the Supreme Court's statement as to Trustee's burden of proof in *Maggio* should not govern following the codification of a Trustee's turnover authority in 11 U.S.C. § 542.

6. Peat, Marwick contends that Trustee has not established any of the three elements enumerated above. Peat, Marwick first argues that, even assuming the 401(k) funds were property of Debtor's bankruptcy estate that was not otherwise exempt, Trustee has not proven that Peat, Marwick was in "possession, custody, or control" of those funds within the meaning of § 542. Rather, Peat, Marwick contends that the money was always in the possession and custody of Irving, the 401(k) Plan trustee, and that Irving and the Committee, not Peat, Marwick, had "control" of the 401(k) funds. A key assumption in this argument is that the Committee, which has not (nor has its members) been named as a defendant by Trustee, is a legal entity separate and distinct from Peat, Marwick for purposes of the present proceeding.

7. The federal statutory provisions governing retirement income security are set forth in Chapter 18 of Title 29 of the United States Code. 29 U.S.C. §§ 1001 et seq. An employee benefit plan such as Peat, Marwick's 401(k) Plan is required to designate a "named fiduciary."

(1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. *Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.*

(2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument. . . .

29 U.S.C. § 1102 (emphasis added). Under Peat, Marwick's 401(k) Plan, the Committee was vested with "the sole responsibility for the administration of th[e] Plan." PM. Ex. 1 § 8.1. The 401(k) Plan further states that "[t]he Committee members shall constitute the *'named fiduciaries'* for purposes of [ERISA]." Id. at § 8.2 (emphasis added).

8. The purpose of a "named fiduciary" was specifically discussed by the Second Circuit in *Birmingham v. SoGen–Swiss International Corp. Retirement Plan,* 718 F.2d 515 (2nd Cir.1983). *SoGen–Swiss* also illustrates that a committee which is a named fiduciary under the plan can be a discrete legal entity from the company itself.

9. In *SoGen–Swiss* as here, a committee was created to administer a qualified plan and was empowered to interpret the plan and to decide any and all matters arising under the plan. The company's board of directors subsequently became dissatisfied with the committee's interpretation of one provision of the plan and sought to negate that interpretation by a

resolution and later appointment of a more sympathetic committee. The Second Circuit held that the sponsor of a plan did not have authority to overrule an interpretation of the plan by the committee. In reaching this conclusion the court stated:

> Under ERISA, a "named fiduciary" has the "authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). We have no difficulty in concluding that these powers, even apart from Section 10.2(b) of the Plan, include the rendering of interpretations as to the meaning of the provisions of the Plan.... *A valid plan under ERISA must designate "a named fiduciary" so that responsibility for managing and operating the plan— and liability for mismanagement—are focused with a degree of certainty. See* H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038, 5075–78, 5081. This is in the interest of the beneficiaries, but it is also in the interest of a sponsoring corporation such as SoGen. Were the argument accepted that its Board had the authority to review and alter every action of the retirement Committee, the corporation might well be exposed to liability and its assets put in peril for all of the Retirement Committee's actions. 29 U.S.C. §§ 1102(21)(A), 1105. The very purpose of requiring the designation of a "named fiduciary" would thus be undermined by SoGen's interpretation. *It would diffuse responsibility where Congress intended to focus it....*

*SoGen–Swiss,* 718 F.2d at 522 (emphasis added) (footnote omitted). As the Second Circuit's discussion indicates, Congress contemplated that plans under ERISA could be structured so that management of the plan and the accompanying legal responsibility is vested in an entity distinct from the employer who sponsors the plan.

10. Other courts have also held that a committee vested with powers comparable to those bestowed on the Committee under Peat, Marwick's 401(k) Plan is the legal entity responsible for any wrongful payment under the plan and that the employer who sponsors the plan is generally not a proper defendant.[6] *See, e.g., Reynolds v. Bethlehem Steel Corp.,* 619 F.Supp. 919 (D.Md.1984); *Boyer v. J.A. Majors Company Employees Profit Sharing Plan,* 481 F.Supp. 454 (N.D.Ga.1979). *See generally Brown v. Retirement Committee of the Briggs & Stratton Retirement Plan,* 575 F.Supp. 1073 (E.D.Wis.1983). The context in which such cases usually arise is that a beneficiary who has been denied some form of benefits under a plan has brought suit under 29 U.S.C. § 1132[7] against numerous defendants, including the sponsoring company, the plan committee, and the plan trustee. Often the sponsoring company moves to dismiss the complaint against it on the ground that it is not a proper defendant.

11. In *Bethlehem Steel,* 619 F.Supp. 919, the district court was confronted with such a situation and its discussion is typical.

> Those courts which have considered whether an employer is a proper party in a suit such as this one, brought pursuant to 29 U.S.C. § 1132, look first to whether an administrator for the pension plan has been appointed. *If so, the administrator is the proper party, not the employ-*

**6.** An entity other than the named fiduciary can have fiduciary obligations under ERISA. 29 U.S.C. § 1002(21)(A). With the exception of the named fiduciary, ERISA ties the fiduciary status of an entity to its responsibilities under the plan. *Leigh v. Engle,* 727 F.2d 113, 133 (7th Cir.1984); *Arakelian v. National Western Life Insurance Co.,* 680 F.Supp. 400, 403–04 (D.D.C. 1987), *reconsideration denied,* 724 F.Supp. 1033 (D.D.C.1989). Courts examine the role that a person plays in the management or administration and assess the extent of discretionary authority, all without undue reference to form titles. *Blatt v. Marshall and Lassman,* 812 F.2d 810, 812 (2nd Cir.1987). Further, a person performing merely ministerial functions for a plan is not a fiduciary. *Id.* Here Trustee has not established that Peat, Marwick had any fiduciary responsibilities under the 401(k) Plan or otherwise exercised such authority.

**7.** 29 U.S.C. § 1132 is entitled "civil enforcement" and specifically authorizes a plan beneficiary to bring a civil action to recover benefits owed under the plan or to enforce his or her rights under the plan. 29 U.S.C. § 1132(a)(1)(B).

*er, unless the employer has controlled or influenced the administrator's decisions in regard to awarding pension benefits.*

*Id.* at 928. (emphasis added).[8]

12. *J.A. Majors,* 481 F.Supp. 454, is similar. The court first observed that responsibility for plan administration was vested in a committee. On the basis of the plan provisions and evidence that a committee had been elected and was functioning, the court stated that the "evidence is uncontroverted that the Committee was a viable, operating entity which together with the trustee bank, was wholly responsible for administering the [plan]." *Id.* at 458. Further, "the Committee was an entity separate from the Company." *Id.* The court concluded:

> Since the Plan was managed and controlled exclusively by the Committee and the trustee bank, the Company was not a named fiduciary under the Act. In summary, then, there is no evidence that the Company controlled the Plan or had anything to do with its administration. This being the case, the Company is not a proper party defendant in this ERISA action....

*Id. See also Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.1988), *cert. den.,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988) ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits."); *Thompson v. Asbestos Workers Local No. 53 Pension Fund,* 554 F.Supp. 296, 299 (M.D.La.1983), *aff'd,* 716 F.2d 340 (5th Cir.1983) ("In general, pension funds are treated as separate entities from the employers or unions which create them.").

13. As discussed in the Findings, under Peat, Marwick's 401(k) Plan, the Committee was the named fiduciary and had the sole responsibility for the payment of benefits under the 401(k) Plan. The parties have

stipulated that with respect to Debtor's withdrawal of the 401(k) funds, the Committee functioned in the manner outlined in the 401(k) Plan. Specifically, the Committee reviewed Debtor's application to withdraw his 401(k) funds, found that he was entitled to do so as a terminated partner, and authorized Irving Trust to make payment to Debtor.

14. Under the authority discussed above, it must be concluded that the Committee was a legal entity discrete from Peat, Marwick and that the Committee was the fiduciary that "controlled" the 401(k) funds. Of course the above authority addresses liability under ERISA. "Control" as used in those cases refers to the fact that the committees therein made the decision whether or not benefits should be paid. The specific focus of this adversary is "control" as used in 11 U.S.C. § 542. This distinction, however, makes no difference here.

15. The thrust of 11 U.S.C. § 542 is that an entity having the power to regulate or direct the transfer of assets that are property of a debtor's bankruptcy estate must utilize that power of direction to turn the assets over to trustee for the estate or otherwise account for them. *See, e.g., In re Belize Airways Limited,* 6 B.R. 157 (Bankr.S.D.Fla.1980). The Trustee complains that although Debtor was entitled under the terms of the Plan to withdraw the 401(k) funds because he was a terminated partner, the intervention of Debtor's bankruptcy and Peat, Marwick's knowledge of it, made the payment of the funds to Debtor, instead of Trustee, wrongful. However, the Committee for the 401(k) Plan, not Peat, Marwick, is the entity that had the responsibility to and did authorize and direct the payment to Debtor. In this case the Committee for the 401(k) Plan "controlled" the 401(k) funds within the meaning of 11 U.S.C. § 542.[9]

---

8. The term "administrator" is defined in 29 U.S.C. § 1002(16)(A) to mean "(i) the person specifically so designated by the terms of the instrument under which the plan is operated: [or] (ii) if an administrator is not so designated, the plan sponsor...." As previously discussed,

the 401(k) Plan involved in this case specifically designates the Committee as the entity with sole responsibility to administer the plan.

9. The underlying issue in a turnover action against the Committee would involve its notice or knowledge of Debtor's bankruptcy when it

16. As the discussion in *Bethlehem Steel* and *J.A. Majors* suggests, even though a committee which administers a plan is a distinct legal entity from the sponsoring company, it is still possible for the sponsoring company to control the plan and thus be held liable under ERISA. *See Bethlehem Steel,* 619 F.Supp. at 928; *J.A. Majors,* 481 F.Supp. at 458. In other words, notwithstanding the existence of a committee to administer a retirement plan, if the sponsoring company effectively makes the decisions on the payment of benefits and other issues arising in conjunction with the plan, then it is deemed to control the plan for liability purposes under ERISA. *See, e.g., Adamo v. Anchor Hocking Corp.,* 720 F.Supp. 491, 498 (W.D.Pa. 1989); *Jansen v. Greyhound Corp.,* 692 F.Supp. 1022, 1024–25 (N.D.Ia.1986). This power would also constitute control under 11 U.S.C. § 542 because the company, not the committee, would then be the entity effectively directing payment of assets that are property of the estate.

17. Here, however, Trustee has offered no evidence of such de facto control by Peat, Marwick. The only evidence that Trustee points to is the fact that (1) the Committee was composed of Peat, Marwick partners and was selected by and served at the pleasure of Peat, Marwick without compensation; and (2) the withdrawal form for the Peat, Marwick 401(k) Plan had the Peat, Marwick name and logo on it. These factors alone, however, have been held inadequate to show that an employer sufficiently controlled a plan such that the employer should be held liable for any wrongful conduct in the payment of benefits under the plan.

18. In *J.A. Majors,* 481 F.Supp. 454, the company's board of directors appointed the committee. Notwithstanding this the court found that there was "no evidence that the Company controlled the Plan." *Id.* at 458. The discussion in *Bethlehem Steel Co.,* 619 F.Supp. 919, is more specific.

> [A]s to the facts that Bethlehem employees sit on the Board and that [the plan

secretary] is a Bethlehem employee, it is clear that ERISA allows an employer to name the fiduciaries of the plan. 29 U.S.C. § 1102(a)(2)....

> Congress, to protect beneficiaries and participants of the Plan, built into the law very specific fiduciary duties which the named fiduciaries must perform. Criminal penalties may be imposed, or civil actions may be brought for violations of a fiduciary's duties....

> This court will not conclude that the fact that Board members and the Secretary are employees of Bethlehem Steel leads to the conclusion that they acted as agents of Bethlehem Steel, under the influence and control of the employer ...

*Id.* at 929. *See also Leigh v. Engle,* 727 F.2d 113, 133–34 (7th Cir.1984) (party with authority to select plan administrator has a fiduciary obligation in the selection and retention of such an administrator, but not as to the administrator's investment decisions); *Sandoval v. Simmons,* 622 F.Supp. 1174, 1211 (C.D.Ill.1985) (following *Leigh* ). *Cf. Moehle v. NL Industries, Inc.,* 646 F.Supp. 769 (E.D.Mo.1986), *aff'd without opinion,* 845 F.2d 1027 (8th Cir.1988). Accordingly, the court holds that Trustee has not proven that Peat, Marwick controlled the 401(k) Plan. In this regard Trustee has not proved such control by a preponderance of evidence, let alone clear and convincing proof.

19. Trustee has also failed to sustain his burden of showing that Peat, Marwick was in "custody or possession" under 11 U.S.C. § 542 of the $93,279.01 paid to Debtor. The parties have stipulated that "Irving Trust had possession and custody of debtor's 401(k) funds at all relevant times and distributed said funds to debtor in March of 1988." Joint Stip. ¶ 5. It is unlikely that by entering this stipulation Trustee intended to concede that Peat, Marwick was not in "possession and custody" of the $93,279.01 within the meaning of 11 U.S.C. § 542. Assuming that was not Trustee's intent in stipulation, the court

authorized the payment (as distinguished from Peat, Marwick's notice or knowledge). *See* 11 U.S.C. § 542(c). Given that the Committee has

not been named a defendant in Trustee's Third Amended Complaint, there is no need to reach this issue.

still finds that he has failed to sustain his burden on this issue.

20. (a) The structure and operation of the 401(k) Plan is carefully spelled out in the plan agreement. Funds contributed under the 401(k) Plan were held and invested by Irving Trust, the trustee for the plan during the relevant times for this case. All decisions regarding payment to beneficiaries or interpretation of the plan were made by the Committee. Irving Trust would make payments as instructed by the Committee.

(b) The evidence does not clearly establish whether the pay out procedure set forth in the plan was followed in the present case. Further, neither party traced the handling of the $93,279.01 payout check. The evidence did not establish whether that check was paid directly from Irving Trust as the plan trustee to Debtor, or whether the check was sent by Irving Trust to the Committee or even Peat, Marwick before it was transferred to Debtor. If the check did pass to Peat, Marwick then Peat, Marwick might well have had "possession or custody" of the funds.

(c) The parties stipulated that Irving Trust distributed the funds to Debtor. On the other hand Debtor testified at an earlier hearing on this matter that he called "Peat, Marwick" to get the necessary forms to withdraw the 401(k) funds, that he submitted the completed forms to "Peat, Marwick," and that he received the money from "Peat, Marwick." (Hearing Tr. at 39.) The questions to which Debtor gave these answers, however, did not clarify whether Debtor was aware of the distinction between "Peat, Marwick" on one hand and the "Peat, Marwick 401(k) Plan for Partners" and the Committee on the other.[10] It is very conceivable that Debtor testified that Peat, Marwick paid him because he received his check and just naturally assumed that Peat, Marwick administered the plan and paid the beneficiaries. Debtor's testimony is sufficiently unclear on this point that the court cannot rely on

it to contradict the mechanics set forth in the Plan and stipulated to by the parties. Trustee has failed to prove by preponderance of evidence, let alone clear and convincing evidence, that Peat, Marwick was "in possession, custody or control" of the 401(k) funds and therefore has failed to establish an essential element in a cause of action for turnover under 11 U.S.C. § 542.

21. Notwithstanding this analysis, Trustee argues that he is entitled to judgment on the ground that Peat, Marwick admitted in its answer to the Third Amended Complaint that it was in possession and control of the § 401(k) funds. The general rule is that a party is bound by the admissions of his or her pleadings. *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir.1989) (collecting cases), *cert. den.*, —— U.S. ——, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990). Further, the pretrial order in this proceeding provided that every admission in a pleading is admitted into evidence. Trustee's Third Amended Complaint, and the corresponding part of Peat, Marwick's Answer are as follows:

4. Peat, Marwick and/or State Street Bank & Trust Co. [successor to Irving], as Trustee of the Debtor's 401(k) Plan was in possession or control of the Debtor's 401(k) Plan account in the sum of $93,279.01 until March 7, 1988 ...

Answer to ¶ 4: For answer to paragraph 4 of the Third Amended Complaint, these defendants [Peat, Marwick and State Street] state ... A. John Robertson's termination of service at Peat Marwick occurred on May 31, 1985; that paragraph 6.2 of the Plan requires these defendants to pay to Mr. Robertson, upon his request and after his termination, his entire vested interest in the Plan, that such a request was made on December 18, 1987, and that on or about March 7, 1988, $93,279.01 was paid out to Mr. Robertson as required by paragraph 6.2 of the Plan; but, except as so expressly admitted, defendants deny each and every allegation of said paragraph 4.

---

**10.** Debtor's testimony indicates that he knew that the funds were held by an "outside pension trustee," not Peat, Marwick, but there is no

indication he was aware of the Committee or its responsibilities. Hearing Tr. at 40.

6. Notwithstanding ... notice [of Debtor's bankruptcy], Peat, Marwick authorized, permitted and approved the Debtor, A. John Robertson, Jr. to receive his 401(k) account in the sum of $93,279.01.

Answer to ¶ 6: For answer to paragraph 6 of the Third Amended Turn Over Complaint, these defendant [sic] admit that on or about March 7, 1988 these defendants paid over to Mr. Robertson the $93,279.01 in his 401(k) Plan as they were obligated to do pursuant to paragraph 6.2 of the Plan, and, except as so expressly admitted, these defendants deny each and every allegation contained in said paragraph 6.

The issue is further complicated by ¶ 5 of the Joint Stipulation, which Trustee entered into, which provides that Irving Trust "had possession and custody of debtor's 401(k) Plan". That stipulation could be read to contradict the very admission that Trustee now seeks to enforce.

22. Paragraph 4 of the Third Amended Complaint discusses both Peat, Marwick and State Street Bank and is stated in the disjunctive "and/or." It could refer to either Peat, Marwick or State Street Bank as the party with "in possession or control" or both. The more troubling statements are the portion of the answer to paragraph 4 which provides that the 401(k) plan required "these defendants to pay" Debtor and the portion of the answer to paragraph 6 which states that "these defendants paid over to [Debtor] the $93,279.01 ... as they were obligated to" under the 401(k) Plan. The phrase "these defendants" appears to admit that both defendants, not just State Street Bank, were obligated to pay. An obligation to pay in this context, however, is not necessarily the same as having possession, custody, or control. Conceivably Peat, Marwick could have served as an intermediary under which it handled and transmitted the paper work between the beneficiaries and the Committee. In this situation Peat, Marwick perhaps could be said to have an obligation "to pay" even though it did not have "custody, possession or control" of the 401(k) funds. The court cannot conclude on the basis of Peat, Mar-

wick's ambiguous answer that it conceded this point.

23. Further, the principal advantage of the admission to Trustee, to the extent it is an admission, is that it may have entitled Trustee to object to and exclude evidence as to the "possession or control" of the 401(k) funds. *See Stacy v. Aetna Casualty & Surety Co.,* 484 F.2d 289, 294 (5th Cir.1973) ("It is incumbent upon [plaintiff] to oppose the introduction of evidence directly at variance with his claim of admission."). *But see Lucas v. Burnley,* 879 F.2d at 1243 (rejecting "the blanket rule" that a failure to object to the introduction of evidence constitutes an implied consent to try an issue already admitted in the pleadings.") Trustee did not object to the admission of Peat, Marwick's conflicting evidence and even entered into an apparently conflicting stipulation. It is true that Peat, Marwick raised the issue of control on the very eve of trial. However, Trustee did not seek a continuance on that ground.

24. On the day set for trial, Peat, Marwick filed a motion for leave to file an amended answer (the "Amended Answer") pursuant to Federal Rule of Civil Procedure 15 (as adopted by Bankruptcy Rule 7015). The Amended Answer would have responded to ¶ 4 and ¶ 6 of Trustee's Third Amended Complaint as follows:

Answer to ¶ 4: Defendants deny that Peat, Marwick or State Street Bank ever had possession, custody, or control of debtor's 401(k) Plan account, admit that debtor's account in the sum of $93,279.01 was distributed to debtor in accordance with the terms of the 401(k) Plan instrument on or about March 7, 1988, state that, insofar as the Complaint purports to be brought against the 401(k) Plan itself as a defendant, said entity lacked actual knowledge and actual notice of the bankruptcy and therefore cannot be subjected to liability herein by virtue of 11 U.S.C. § 542(c), and otherwise deny each and every allegation contained in paragraph 4.

Answer to ¶ 6: Defendants admit that the 401(k) Plan administrators authorized, permitted or approved debtor's

withdrawal of the 401(k) funds, but deny that Peat Marwick authorized, permitted or approved said withdrawal and otherwise deny each and every allegation contained in paragraph 6.

Because Defendant thereby sought to withdraw its admission on the eve of trial and when both sides were prepared to submit the case on stipulated facts, this motion was denied by order dated February 15, 1990. However, such denial was "without prejudice to movant seeking by motion to conform pleadings to the evidence." Although alerted by all this to Peat, Marwick's late assertion of the control issue, Trustee did not seek a trial continuance to obtain more evidence or join new defendants. The parties then submitted the evidence for trial pursuant to their stipulated record for the court to consider. In this regard, as previously noted, the pleadings are considered amended to conform to the proof as Defendant requested. Considering all the foregoing, the court can and does consider all relevant evidence, including the pleading admissions, in determining whether Trustee has met its burden. The net result of all this is that the admission stands as a somewhat ambiguous piece of evidence in Trustee's favor, but the Trustee has nonetheless failed to establish his burden of proof for reasons earlier discussed.

25. In this complex area of law, Trustees must usually look to whatever fiduciary Committee or individual is set up to control a qualified retirement plan, not to the employer that set it up. The controlling person or Committee should be notified about the bankruptcy filing, and that is the party to sue.

26. There are a number of other issues raised by the parties which need not be reached in view of the foregoing. By separate order, judgment will enter for Defendant.